## GRAHAM v. NESMITH.

1. A finding of fact by the Circuit Judge, reversing the referee, approved.
2. Possession of land is notice sufficient to put a purchaser from another upon inquiry, and furnishes notice of the possessor's rights.
3. Upon the question of genuineness of a signature, the Circuit Judge having determined that there was doubtful proof, and other writings admitted to be genuine being already in the case, there was no error in resorting to a comparison of handwriting.

Before COTHRAN, J., Williamsburg, October, 1883.

This was an appeal from the following decree:

On account of the lapse of time, manifest ignorance on the part of the plaintiffs of their rights, perfunctory agreement imperfectly performed, a series of annual rent notes for nominal sums, various ambiguous receipts, a multitude of chimney corner counsellors, an

attempted transfer of title to the land in dispute by one of the defendants to the other, a pretended tax sale, proceedings instituted for summary ejectment, and some appearances of artful design and unfairness, this matter is in great confusion. Without encumbering this decree with a detail of the evidence of these elements of confusion, I shall endeavor to make the briefest statement of the case that I can to be perspicuous and announce the conclusions which I have attained.

On December 27, 1870, the defendant, Sarah Nesmith, and the plaintiffs entered into an agreement, in writing, by which the former agreed to sell to the latter the land in question, containing 168 acres, for the sum of $400, payable in three annual instalments, after a cash payment of $60, with interest on the deferred payments. The agreement contains a forfeiture clause, in effect that if default be made as to any of the stipulated payments, the vendor "shall be at liberty to consider the contract as forfeited and annulled, and to dispose of said land to any other person in the same manner as if this contract had never been made," and without liability to refund any portion of the money paid or to pay for any of the improvements, &c.

The purchasers went into possession immediately, making the cash payment of $60. Up to January 1, 1874, the expiration of the three years, the purchasers paid in all the sum of $310, in various amounts and at various times. The last of these payments, to wit, the sum of $50, was made on December 27, 1873.

Immediately after January 1, 1874, B. M. Nesmith, the husband of Sarah Nesmith, notified the plaintiffs that their contract for the land was at an end. On the 12th of January, a few days after the notification, Sarah Nesmith accepted the sum of $15 from the plaintiffs and receipted to them for the same without specifying on what account. There is no evidence of any other indebtedness by the plaintiffs to her. On the same day the plaintiffs made their note to Sarah Nesmith for the sum of $1 for rent of the land for the year 1874.

On January 8, 1875, the plaintiffs paid to her the sum of $44, and she receipted for the same on account of rent of land, and the plaintiffs gave her their note for $1 for rent of land for the year 1875. On January 15, 1876, they paid her $30, for which

she gave a receipt expressing the payment to be "for land." They, as before, gave her their note for $1 for rent of the land for the year 1876. On January 20, 1877, they paid to her $28, for which she gave a receipt expressing the payment to be "for land." They again gave her their note for $1 for rent of land for that year.

· During the year 1877 the plaintiffs made in all four payments at different times, the receipts for which do not express the account on which they were made. On January 25, 1878, they paid to her $2 "on land," and on February 18 following another payment of $7.05, and made their note to her for $1 for the rent of that year. Another payment of $25 was made by them on December 25 following, the receipt for which does not state on what account.

On February 1, 1879, they paid to her $9, and she gave them a statement in the following terms, viz.:

"This is to show that the amount still due on the land occupied by Dug Tucker, Bonus Graham, and Hope McNulty, is ($71.63) seventy-one dollars and sixty-three cents.

"SARAH NESMITH.

"February 1st, 1879."

Ten days afterwards they paid her $5.70, on what account not stated in the receipt, and made their note for $1 for rent of land for that year. This note has been lost. On January 12, 1880, they paid to her the sum of $24, the receipt does not state on what account, and they gave her their note for $1 for rent of land for that year. On December 29, 1880, Sarah Nesmith executed and delivered her deed of the land in question to W. E. Nesmith, in which the consideration is stated to be the sum of $165, which she said was duly paid to her by him.

No other payments are claimed by the plaintiffs to have been made to Sarah Nesmith on any account, though they say in their testimony reported by the referee that they tendered to her the balance due. In this they are sustained by one Sam McBride, a witness, who swore he went with them to Mrs. Nesmith and saw them offer the money. They further swore that the balance due to Mrs. Nesmith was borrowed by them from one Rhem for the purpose of paying the same to her, and D. D. Rhem swore that

he saw the plaintiffs borrow the money from his father and in a few days return the same to him.

W. E. Nesmith, who sets up title from Sarah Nesmith to the land in question, is her son; lives near her and within two or three miles of the land in question, and was living there when the plaintiffs went into possession. He was present on January 8, 1875, when the plaintiffs made a payment to his mother of $44, drew up the receipt for the same which she signed, and also drew up the note for $1 for rent that year.

It appears that for the year previous to the alleged sale of the land to W. E. Nesmith the plaintiffs had failed to pay the taxes for the first time since their possession of it. They undertake to explain their default by saying that upon application to the treasurer for that purpose they were told by him that the land had not been returned for taxation. W. E. Nesmith paid the taxes for it for that year and produced the receipt for the same, and although the land was perhaps in the "delinquent list," it cannot be true, as was stated by Mrs. Nesmith, that the land had been sold for taxes and had been purchased at the "tax sale" by her son, W. E. Nesmith. The execution of her deed conveying the land to her son, dated December 29, 1880, is inconsistent with the truthfulness of her statement, to say nothing of the production of the tax receipts held by W. E. Nesmith. When Mrs. Nesmith told the plaintiffs that her son had bought the land at the tax sale and referred them to him, they went at once to him to refund the amount of the taxes so paid. He declined to treat with them and claimed the land as his own.

Very soon afterwards he instituted proceedings before a trial justice to eject the plaintiffs from the land, in which he succeeded; and this complaint was filed to enjoin the enforcement of that process and for specific performance of the original contract of December 27, 1870.

Before entering upon the consideration of the gist of this action—the matter of the right to specific performance—it is proper to dispose of a serious question raised by the defendants as to the genuineness and efficiency of the statement alleged to have been given by Mrs. Nesmith to the plaintiffs, bearing date February 1, 1879, and set out in full *supra*.

In view of the extraordinary transaction hereinbefore set forth, the character and condition of the parties concerned, the continuous acceptance of money by Mrs. Nesmith after the technical forfeiture, the various and ambiguous receipts for the same given by her, annual rent notes for the nominal sum of $1 each, and bearing in mind that equity is averse to regarding time as the essence of such contracts, I might safely conclude that there has been a waiver of the forfeiture clause of the agreement of December 27, 1870, and consequently adjudge this to be a proper case for the specific performance of that agreement.

The plaintiffs' right to such relief, however, cannot be denied if the statement of February 1, 1879, is a genuine paper. Is it genuine or not? The inquiry is not unworthy of the very best consideration. Mrs. Nesmith, who was put upon the stand by the plaintiffs to prove this and other papers, one of which was the original agreement, swore that she would not say whether she signed the papers exhibited to her or not. "I could not recognize my signature if it was shown me," etc. The plaintiff Tucker says, in his testimony, that Silas Nesmith wrote most of the receipts which his mother signed, and that he wrote the statement of February 1, 1879.

S. T. Cooper, a witness for the plaintiffs, said: "I have often seen the handwriting of Silas Nesmith, deceased. Think Silas wrote receipts dated February 10, 1877, February 1, 1879, February 23, 1877, and three receipts dated January 20, 1877; *also, statement of amount due on land February* 1, *1879.*" This statement was signed "Sarah Nesmith," and upon comparing it with her signature to the original agreement and with other acknowledged signatures of hers, I am satisfied, as was the intelligent referee, that this instrument is genuine and that the signature is hers.

It is strenuously insisted, however, by the learned counsel for the defendant that the proof of this and of the other papers is insufficient, because violative of the rule of evidence that comparison as an original means of ascertaining the genuineness of handwriting will not be permitted; admitting, however, that it is allowable in aid of doubtful proof. The latest case upon the subject is that of *Benedict, Hall & Co.* v. *Flanigan* (18 *S. C.*,

506), which reviews the former decisions in this State, and seems to me to be analagous to the one now under consideration. In that case the court say : * *

In this case Mrs. Nesmith declines to say whether the signature was hers or not; that she would not know her signature if she saw it, &c. Surely it would not be a violent presumption in the ordinary transactions of men, involving repeated payments of money, that the production by the payor of the payee's receipts is *prima facie* or presumptive proof of payments; but it becomes almost conclusive, scarcely needing the aid of comparative or other proofs, when the payors are ignorant and unlettered and the payee being put upon the stand refused to admit or deny her signature.

I think the referee was right in admitting supplementary testimony.

Another obstacle to a decree for specific performance is interposed by the defendant, W. E. Nesmith, who claims, under the deed of his mother, dated December 29, 1880, to be the real owner of the land in question. The referee has found that W. E. Nesmith did not have actual notice of the plaintiffs' claim to the land, and that the facts proved were not sufficient to charge him with constructive notice. I am unable to concur in this conclusion. The facts proved in the case, the proximity of W. E. Nesmith to the premises, family connection, preparation by him of receipts for a part of the money paid previously to his mother, continued possession by plaintiffs for nearly ten years, annual payment of taxes not stipulated for in the annual $1 rent notes, one of which W. E. Nesmith drew up—all, taken together, were abundantly sufficient, in my judgment, to have given to him both actual and constructive notice, and, if not, should certainly have put him upon inquiry as to the true state of affairs. *Massey* v. *McIlwain*, 2 *Hill Ch.*, 421.

Nor am I able to concur with the referee in his conclusions as to the $1 rent notes (so-called). The plaintiffs were either lessees or vendees. The referee found that they were the latter. In this I think he is right, and if so it would be inconsistent with the character of vendees to hold them liable for rent of their own land; and the $1 rent notes, in my judgment, are void for want

of consideration.    The defendant, Sarah Nesmith, in taking them
from the plaintiffs, could justly have valued them only as furnish-
ing evidence of attornment to herself as landlord of the premises,
and as fixing upon the plaintiffs the condition of tenants; and by
reason of the fact of waiver, and of other circumstances herein-
before stated, these notes, being insufficient for that purpose, are
devoid of all value as money obligations and should be delivered
up to the plaintiffs.

Not having been furnished with the notes given for the pur-
chase money of the land, and having reason to believe from the
testimony that a special rate of interest is set forth in them,
which does not appear in the original agreement, I am unable to
estimate the balance due to the defendant, Sarah Nesmith, for the
land.    This calculation should be made by the clerk of this
court, attended for that purpose by the respective counsel engaged
in the case, and the true amount ascertained after allowing the
plaintiffs all just and proper credits, disregarding the $1 rent
notes (so-called).

Wherefore it is ordered, adjudged, and decreed, as follows:

I. That the exceptions on the part of the plaintiffs' and
defendants' counsel respectively to the report of the referee be
sustained or overruled as they may be found in conformity with,
or in antagonism to, the principles herein decided, and that the
report of the referee be in like manner modified.

II. That the plaintiffs herein are entitled to specific perform-
ance of the written agreement of date December 27, 1870.

III. That the defendant, Sarah Nesmith, have judgment for
the balance due to her upon the original contract of sale, after
allowing all just and proper credits to the plaintiffs for payments
by them heretofore made to her.

IV. That in default of payment by the plaintiffs of balance
due to the defendant, Sarah Nesmith, as soon as the same is ascer-
tained by the clerk's calculation, that the sheriff of Williamsburg
County do proceed, after due and legal notice, to sell, on sale day
in February next, or some convenient sale day thereafter, in the
usual manner of judicial sale, and for cash, the premises described
in the pleadings, executing and delivering to the purchaser
thereof his title deed as such sheriff.

V. That from the proceeds of sale he do pay to the defendant, Sarah Nesmith, the amount of the balance of principal and interest due to her as the purchase money of said land.

VI. That in event the payment of the same be made to the said Sarah Nesmith without sale, as herein provided for, that she do, upon receipt of the money, execute and deliver to the said plaintiffs her deed of conveyance, in conformity with the covenants contained in the written agreement of date December 27, 1870.

VII. That the deed of conveyance executed by Sarah Nesmith to her son, W. E. Nesmith, bearing date December 29, 1880, be delivered up to the clerk of this court, to be cancelled by him and returned to the said W. E. Nesmith, for such other use than as a claim of title to the premises in question he may see proper to make of it.

VIII. That the parties hereto respectively pay their own attorneys' and witnesses' costs and the cost of subpœnaing the same; and that the cost of the referee and the officers of the court be paid to them—one-half by the plaintiffs and the other half by the defendants.

*Mr. J. A. Kelley*, for appellant.

*Mr. T. M. Gilland*, contra.

February 25, 1886.   The opinion of the court was delivered by

MR. JUSTICE MCIVER.   On December 27, 1870, the defendant, Sarah Nesmith, entered into a written contract with the plaintiffs for the sale of a certain tract of land to them on certain terms stated in said contract.   The only one of these terms which it is necessary to notice, is expressed in the following language : "That if default be made in fulfilling this agreement, or any part thereof, on the part of the parties of the second part, then, and in such case, the party of the first part, her heirs and assigns, shall be at liberty to consider this contract as forfeited and annulled, and to dispose of said land to any other person in the same manner as if this contract had never been made ; and, further, that the said

party of the first part, her heirs and assigns, shall not be required to refund any portion of any sums which may have been paid in pursuance of this agreement, or be required to reimburse or pay to the said parties of the second part, their heirs and assigns, any sum or sums of money for means and labor expended, or time consumed in making any improvements or repairs whatever on the said land."

Under this agreement the plaintiffs went into possession of the land and made numerous payments towards the purchase money, but did not pay the same in full within the time limited for that purpose by the agreement. The defendant, Sarah Nesmith, claiming that by reason of this the contract was forfeited, sold and conveyed the land to her son and co-defendant, W. E. Nesmith, on December 29, 1880. The plaintiffs, on the other hand, claim that after the time limited for the payment of the last instalment, and before the conveyance of Sarah Nesmith to her son, W. E. Nesmith, the said Sarah Nesmith waived the forfeiture by accepting several payments on account of the purchase money and receipting for the same as such, and especially so by a statement in writing, bearing date February 1, 1879, purporting to be signed by said Sarah Nesmith in these words: "This is to show that the amount still due on the land occupied by Dug Tucker, Bonus Graham, and Hope McNulty is ($71.63) seventy-one dollars and sixty-three cents." The defendants, however, contend that there was no legal evidence that Mrs. Nesmith had ever signed these receipts or the statement above copied, and this is one of the questions made by the appeal. The defendant, W. E. Nesmith, also claims that he is a purchaser for valuable consideration without any notice of the plaintiff's equity, and this is the only other question made by the appeal.

The action was for specific performance, and it was referred to a referee to take the testimony and report his conclusions of law and fact to the court. Without going into the various matters considered in the report, which are not now before us, it is sufficient to say that as to the two questions raised by the appeal, the referee found as follows: "On February 1, 1879, the plaintiffs paid Sarah Nesmith $9.00; at the same time she gave them a statement showing the amount still due on the land occupied by

the plaintiffs to be $71.63." And as to the other question raised by the appeal, the finding of the referee is as follows : "The question whether W. E. Nesmith had notice of the plaintiffs' claim is involved in some doubt. He did not have actual notice, and my opinion is that the facts proved by the plaintiffs do not amount to constructive notice."

The case was heard by his honor, Judge Cothran, upon the report of the referee, "and exceptions filed thereto by both plaintiffs and defendants," as he says, though we do not find any exceptions to the report incorporated in the "Case," and therefore cannot tell with certainty whether the two findings of the referee, upon which the questions raised by the appeal largely depend, were properly excepted to. But as the Circuit Judge seems to have considered them, we will assume that these questions were properly raised. In speaking of the statement of February 1, 1879, his honor says : "This statement was signed 'Sarah Nesmith,' and upon comparing it with her signature to the original agreement, and with other acknowledged signatures of hers I am satisfied, as was the intelligent referee, that this instrument was genuine, and that the signature is hers." And after discussing the point raised by the appellant as to the admissibility of testimony as to handwriting by comparison, says : "I think the referee was right in admitting supplementary testimony"—referring doubtless to the fact that at the reference a witness, who claimed to be a judge of handwriting, was permitted by the referee to testify, after comparing the signatures to the receipts and statement of February 1, 1879, with the acknowledged signatures of Mrs. Nesmith to the deed to her son, to the original agreement for the sale of the land, and to an affidavit made in the application for injunction, that the signatures to the receipts and statement were in the same handwriting.

As to the question of notice to the defendant, W. E. Nesmith, the Circuit Judge said that he was unable to concur with the referee in his finding, that there was no proof of actual notice; but, on the contrary, concludes that the various circumstances, mentioned in the decree, were abundantly sufficient to have given him both actual and constructive notice, and if not should certainly have put him upon inquiry as to the true state of affairs.

He, therefore, rendered judgment that the deed from Sarah Nesmith to W. E. Nesmith should be cancelled and that the former should be required to perform specifically her agreement of December 27, 1870, upon the payment by the plaintiffs to her of the balance due on the purchase money.

From this decree defendants appeal upon the following grounds: "I. Because his honor erred in holding that the defendant, W. E. Nesmith, was not a *bona fide* subsequent purchaser of the land in question without notice of the sale to the plaintiffs. II. Because his honor erred in holding that the various receipts and statements signed by the defendant, Sarah Nesmith, were completely proven, it being respectfully submitted that there was no evidence to sustain his honor's conclusions that a comparison of handwritings was in aid of doubtful proof, but that these receipts and statements were only proved by a comparison with other handwritings of the defendant, Sarah Nesmith, as original evidence. There being no other evidence introduced as doubtful proof, consequently every receipt and statement signed by defendant, Sarah Nesmith, was entirely incompetent and violative of the well settled rule of evidence on the subject of a comparison of handwriting."

As to the first ground of appeal, we agree entirely with the Circuit Judge. All the circumstances proved in the case which have been adverted to in the decree, and need not be repeated here, pointed very strongly to the conclusion that the defendant had notice of the claim of the plaintiffs when he took his conveyance from his mother. But waiving this, there can be no doubt that he had constructive notice. It is well settled that possession is notice sufficient to put a party upon inquiry, and that is enough. *Massey* v. *McIlwain*, 2 *Hill Ch.*, 421; *Sheorn* v. *Robinson*, 22 *S. C.*, 32; *Bieman* v. *White*, 23 *Id.*, 490. Finding these plaintiffs in possession, his duty was to inquire of them by what right they claimed to hold the land, and such inquiry would have led to a notice of their equity which they are now seeking to set up.

As to the second ground of appeal, we see no error on the part of the Circuit Judge. Conceding the general rule to be as claimed by appellants, that comparison of handwriting cannot be resorted

to as original evidence, but only in aid of doubtful proof, yet we do not think the rule was violated in this case; though, in common with many other judges who have treated of this matter, we may add that we are unable to see any reason for the distinction. For, as is well said by the Chief Justice, in *Benedict, Hall & Co.* v. *Flanigan*, 18 *S. C.*, 506: "The testimony of those who are acquainted with the writing of the party in question, either from having seen him write or [are] otherwise familiar with his acknowledged writing, has invariably been allowed. From a knowledge thus acquired the witness is supposed to have a standard in his mind impressed by his memory with which he can compare the disputed writing and thus reach a correct conclusion. This being the theory upon which such testimony has been uniformly received, it is somewhat illogical that comparison on the witness stand of a disputed signature with one acknowledged to be genuine has been as uniformly rejected by most courts."

So that in reality all testimony as to handwriting, except where the witness testifies that he saw the party sign, or heard him admit that he did sign, is, in effect, by comparison. But there seems to be an exception to this rule (1 *Greenl. Evid.*, § 578), to wit: "Where other writings admitted to be genuine are already in the case. Here the comparison may be made by the jury with or without the aid of experts." Now in this case the comparison was made with other writings admitted to be genuine which were already in the case, viz.: the original agreement for the sale, the deed to W. E. Nesmith, and some affidavits made in the case upon the application for injunction. So that this case falls clearly under one of the exceptions mentioned by Mr. Greenleaf.

But, more than this; we think that the Circuit Judge whose province it was, according to the case of *Benedict, Hall & Co.* v. *Flanigan, supra*, to determine in the first instance whether there was such doubtful proof as authorized a resort to comparison of handwriting, having determined that question, and there not being any patent error or any error at all in such determination, according to our view, the question is concluded. There was some testimony by the plaintiff, Tucker, tending to show, although possibly not sufficient to show, that the papers in ques-

tion were signed by Mrs. Nesmith, and that makes just such a case as lets in proof by comparison of handwriting. So that it seems to us that in no view of the question was there any error on the part of the Circuit Judge in resorting to proof by comparison of handwriting.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.